All right, we'll call the case of Ashraf Mohamed v. Attorney General of the United States of America. The case of Ashraf Mohamed v. Attorney General of the United States of America. Good morning, may it please the court, my name is Jared Levine, I'm an attorney with Kohl & Moring, and we are pro bono counsel on behalf of the petitioner in this case, Mr. Ashraf Mohamed. If it's acceptable to the court, I'd like to set aside three minutes for rebuttal. Very well, thank you. Your Honors, the affidavit submitted in support of Mr. Mohamed's motion to reopen established two critical facts. First, prior to fleeing Guyana, Mr. Mohamed was the victim of three brutal assaults, numerous death threats from various members of his small village community, and a violent home invasion, all motivated by his sexual orientation. Second, as a result of these violent attacks, Mr. Mohamed suffered several severe injuries, including significant scarring to his head and a fractured finger that has never properly healed. Which finger? I believe his pointer finger, Your Honor. All right. These facts are critical because they directly contradict the basis for the board's merits determination. Maybe we should start with jurisdiction. Sure, absolutely, Your Honor. Because it's always a complicated question in my mind. Some things we have jurisdiction over, and some things perhaps we don't have jurisdiction over. Sure. The determination that the asylum application was filed untimely and no extension of time was granted, do we have jurisdiction over that issue? You do, Your Honor. And the reason for that is because the board actually applied the wrong legal standard. So we're not talking about an appeal on a factual determination. We're talking about looking at the board's decision and saying, was this the proper application of a legal standard? In this case, the board applied something that it referred to as an exceptional circumstance standard, and that's not the correct standard on determining whether an applicant can be excused from filing beyond the one-year bar. Say we agree with you that that itself is a legal question, but it's also the case, is it not, that if it would be idle or useless as a formality to remand for a correction or application of that standard, the Chenery Doctrine doesn't apply in that circumstance. Here we have a finding, don't we, that he failed to produce any evidence or arguments justifying his delay in filing. And isn't that question, that fact-finding, something that we can't revisit given the jurisdictional bar? Well, we disagree with that notion. We believe that his statements about being illiterate, his statements about only having limited education, I mean, he has a fourth-grade education, were sufficient under the circumstances to at least inform the immigration judge that this is something to be considered. The government's position appears to be that he was somehow required to actually explicitly either reference the statute or make an assertion that, oh, I didn't file on time because of this specific issue. And this really gets to sort of the heart of the other issues in this case, which is we're dealing with somebody who lacked the sophistication. So he was about 12 years late in seeking asylum, right? Absolutely, Your Honor. I mean, you suggested, you know, and we have plenty of petitioners who are not educated. Sure. That we'd open up the door to say you can file 12 years after the deadline passed just because you claim that you can't read? Well, I believe that's a determination that's best left to the IJ and then the board. Well, the IJ applied the proper standard. That's correct. The IJ applied extraordinary circumstances. Sure, sure. So going back to Judge Krause's question, wouldn't it be an idle thing for us to send it back? Again, we don't believe so. But again, this is... All right, that's only part of the case. Sure, sure. Let's talk about the past persecution, the finding that there's no past persecution. Sure. Isn't that a factual finding that now is beyond our review? It's not, Your Honor. This court has repeatedly held, including in the context of motions to reopen, that the application of a legal standard, like what type of harm rises to the level of persecution, is a legal issue that this court can review de novo, and that the court retains jurisdiction over that type of application. We've got a couple different issues around this, and I just want to be clear which one we're talking about. Because you make one argument that even aside from the affidavit, just looking at his testimony, that that would be sufficient. Sure. Do you agree, given the 1252 jurisdictional bar, that the sufficiency of the evidence argument is not one that we're able to reach? We don't agree, Your Honor. And the reason for that, and let me back up a second, because clearly our position in this case is that this is not a properly developed record. The record is incredibly vague, and there's not much in terms of factual development of the record, which is why we had to file a motion to reopen in the first place. But if we're going to decide that vagueness is not an impediment to issuing a final determination on the merits, we believe that the vague testimony that was produced and the vague statements in Mr. Muhammad's actual application would be sufficient to establish a case of past persecution. But in asking us to evaluate whether there was sufficient evidence supporting the finding of lack of past prosecution by the immigration judge and BIA, are you taking us into the very kind of fact-finding that is jurisdictionally barred for our review, given the two crimes of moral turpitude here? I don't believe so, Your Honor. And the reason for that is we're not asking the court to do anything other than assume the truth of every bit of testimony in the underlying hearing, because that's what the board did in this case. There's no adverse credibility determination. So our position is simply, if you take everything that Mr. Muhammad said and wrote as true, well, then he's established sufficient facts for a finding of past persecution. Green v. Attorney General says we don't have jurisdiction to ascertain whether a fact-finding was supported by substantial evidence. How is this distinguishable? Because I don't think we're asking whether the decision itself was supported by sufficient factual evidence. Our position is that, assuming all the facts are true, which is the record here, which is the record on the appeal from the board's decision, the facts as stated are sufficient under the case law governing what constitutes past persecution to satisfy that standard. The fact says they existed prior to the motion to reopen? That's correct, Your Honor. But if it's all right, I'd like to return to the motion to reopen, because I think that's a much more straightforward question for this court to answer and avoid some of these issues. But, again, can you focus on the question of whether we can even reach it? Because I understand your argument in your supplemental filings to relate to materiality. Materiality certainly is a mixed question. But when we have mixed questions, that means it's got a couple different parts. One is a legal standard part. One is a factual part. And it's not clear to me whether you are taking issue with the actual articulation of the proper legal standard or simply to the underlying fact-finding as that standard was applied. I think with respect to the appeal from the board's decision itself and the request that there is sufficient evidence in the underlying hearing to establish past persecution, it's a little bit closer. I agree. There's maybe some gray there. But I think ultimately what we're asking is for the court just to apply the case law on past persecution to what under the procedural posture are undisputed facts. And this court has held specifically that where all we're being asked to do is apply a legal principle to undisputed facts, not to make additional fact findings, that the court retains jurisdiction even after applying the jurisdiction, the stripping statute. You say we should take as true everything that was presented, but there's internal inconsistencies in terms of what was presented. What do we do with that? Well, we don't believe that there are internal inconsistencies with what was presented. But, again, if it's all right, I think if we could focus on the motion to reopen for a second, it really cuts around all these issues. Because on the motion to reopen, the sole question before this court is whether the facts, as stated in Mr. Muhammad's affidavit, are sufficient to establish a reasonable likelihood that he could prevail on showing past persecution in a new merits hearing. We believe that the court, the board, in reaching a contrary determination, stating that the facts as stated were insufficient, violated both his own precedent and also, more importantly, this court's precedent. What was new about the evidence presented in the affidavit? Well, for one, the statements about injury that were suffered. But does new connote a meaning that it was previously unavailable? That is one of the requirements. And to be clear, the board did not reach any determination that this evidence was previously available. So should we ask the BIA to clarify its decision? We don't believe so. We think that the board's decision is very clear. They're denying on a single ground materiality. They're saying that they refer to it as new evidence. So they've made the finding that it's new evidence for the purposes of their analysis. And they continue to say that even with this new evidence, Mr. Muhammad would not have a reasonable likelihood of changing the outcome of this proceeding. And that's where we ask the court to apply its own past precedent, including in the 2006 decision in Tory, which held that under comparable circumstances, three incidents of violence combined with scarring on a petitioner's head and a home invasion were sufficient to establish past persecution. I thought you were making a couple of arguments, not just that there was an error in materiality, but also that by articulating as a ground for denying the motion to reopen, that the evidence was already reflected in the immigration judge's decision, that that was the BIA failing to even consider evidence and arguments presented, which itself would be a legal issue separate and apart from the materiality standard. Is that right? The board doesn't actually say that the evidence or the facts were reflected in the immigration judge's prior decision. They make a very vague statement that the harm that Mr. Muhammad suffered is reflected in the prior proceeding. I think it's undisputed in this case, and the government's going to be making this argument shortly, that Mr. Muhammad never testified about the type of injuries that he suffered while he was in Guyana, and he was never asked to. That's our position as to why he never provided that testimony. One of your arguments as to legal error in the denial of the motion to reopen is that the board didn't – that statement that that harm, what was presented in the affidavit, was already reflected in the immigration judge's decision itself reflects a legal error, correct? Yes, that part is correct. In addition to materiality. Yes. And this court has, in fact, held that it is a legal error where a decision is issued based on an unequivocal misperception of what's occurred in the underlying proceeding. Can we go back to the threshold questions on materiality, though? Sure. Because if what you're asking us – in your second supplemental brief, you seem to be arguing that the BIA applied the wrong legal test when it stated that the evidence would not alter the outcome and that the correct standard under Kohler was that it was likely to change the result. Am I understanding that argument correctly? No, Your Honor. We weren't intending to make that argument because I do think that the board's decision ultimately does reflect and cites to the proper standard in other cases that it's about reasonable likelihood. Our position, as reflected in the most recent filing, is the question here is simply, do the facts stated rise to the level of past persecution? And that is a mixed question of facts and law for which this court has held the jurisdiction stripping statute does not prevent this court from exercising jurisdiction. If we find a legal claim raised so that we get over the jurisdictional bar, and even if we were to agree with your position that the BIA erred on materiality, given the point that was raised by Judge Van Aske, that is, the board did not address the question whether this could have been raised previously by your client. Given that, wouldn't we need to remand without any kind of direction or instruction to reopen for the board to consider that separate ground for denying reopening? I think the answer to that is that the board did say this is new evidence, and so I took that as their reaching a determination on that issue. I thought that was sufficiently clear in their decision. I don't think they denied it. They certainly didn't find that it could have been previously presented. And we did explain in our briefing why it could not have been previously presented, and that would bring us back to discussion of another independent ground for remanding, which I'm happy to address, the due process concern, if the court will allow me to continue. I understand the argument. I think we're fine. Thank you. Thank you. Good morning. Greg Bennington on behalf of the Attorney General. First, I want to just acknowledge that my office really dropped the ball on not recognizing this jurisdictional problem earlier and apologize for any time wasted by the court or opposing counsel on issues which aren't really issues anymore. That being said, the criminal alien bar clearly applies here, as the court recognizes. So I'd like to focus down on what I see as the questions of all presented in these petitions for review. The first one recognized by Judge Banaski was whether the board applied the correct legal standard for denying the asylum application as untimely. As you recognize, the immigration judge clearly applied the right standard, and the board enunciated the correct standard. They said extraordinary in the preceding paragraph, but then go on to say exceptional. I think that's just a typo, and remanding, as Judge Krafft said, would really do no good. So the second question of all which I saw was the argument that the immigration judge violated a duty to develop the record and counsel cites to 1229AB1, which is titled Authority of the Immigration Judge, which just tells the immigration judge that he or she has the authority to administer oaths, receive evidence, examine or cross-examine witnesses. Now, I don't think that that clearly defines a duty to develop the record, even if the courts have kind of reached that question. So that's a question of law which I don't think was violated here. So the immigration judge asked an open-ended question. There's no denying that. But if you look at the whole posture of that last hearing, Mr. Muhammad requested another continuance, which would have been his 14th, and he was clearly a little upset that the immigration judge denied that continuance. So she went on to question, tell me everything that happened in Guyana, why you believe you will be persecuted or tortured if returned. He went on to give a small narrative, and he said, that's all I can tell you, Judge. So the judge passed it off to the Department of Homeland Security attorney, who noted inconsistency between that testimony that he just gave and his application for asylum. And he got even a little more combative and said, I'm not answering any more questions. So I don't think it's clear from the record that even if the immigration judge or the Department of Homeland Security attorney would have asked another question, he would have even answered. And if you look even another two pages into the record, he started cursing the DHS attorney. So I think he was continually arguing that he deserved to be let out on bail, to be given more time to get an attorney. And the immigration judge clearly in this case, even a cold read of the transcripts, was overwhelmingly nice to Mr. Muhammad. Can we go back to what does due process mean then in this context? Because we don't have developed, and among the courts of appeals, there seems to be a variety of approaches to what obligation there is on the part of an I.J. to develop the record, with some, like the 8th and 9th, taking it as a due process issue. Others, like the 2nd, taking it as a sufficiency issue. And it's not something that we have really developed in our circuit. So what does it mean? Is it really the department's position that all that's required to satisfy due process and develop the record is to go through, to inform an applicant of the nature of the charges against them? Does that really suffice? Well, as the court in Bonamitre said, due process requires a reasonable opportunity to present evidence and applications for relief in a fair hearing. So although that might be vague, I think that that was clearly afforded to Mr. Muhammad in this proceeding. Is it enough to say, tell me what supports your claims, and leave it at that with no follow-up questions by an immigration judge? That is sufficient. That's his opportunity, a reasonable opportunity to present his evidence. So is it a subjective test or an objective test given the person in front of the immigration judge, somebody with very limited education and really no knowledge of the system? I believe it would be subjective, and I think you would have to look at the totality of the hearing and what kind of process was given. Here, the immigration judge did everything she was required to by regulations. She advised him of his right to an attorney, his right to present evidence on his behalf, his right to present witnesses. She gave him the legal aid list and gave him numerous continuances to get an attorney, not trying to attack his credibility or anything. He clearly did while he was in a removal proceeding. He got an attorney to sue the city of New York for $5 million. So she was given all these continuances. She asked many questions about his relatives, identifying various applications for relief he might apply. She asked him if he feared returning. In the end, she let him apply for asylum and withholding of removal. She let him apply for cancellation of removal. She answered many questions about various musings he heard in the jailhouse about what forms of relief he might be eligible for. He asked for a U visa. He asked for a 212H waiver. And the immigration judge, I think, very politely responded, explaining what was required for those forms of relief and further explaining why he wasn't eligible. And in the end, at his merits hearing, she said, tell me everything you want me to hear about why you fear going back. And maybe she could have asked more questions, but I think he made clear that he wasn't going to answer any more questions. So I think that's the beginning of the due process argument is he has to show substantial prejudice. He has to show that he would have answered more questions. That's his whole argument as to why he was denied due process is because the immigration judge didn't ask follow-up questions. And I don't think he even gets over the substantial prejudice hurdle here. Well, now it appears from the affidavit there was much more evidence that could have been elicited, and certainly with the benefit of pro bono counsel has been. On the motion to reopen, do you agree, given the two grounds that were put forward by the BIA, that that presents legal issues that at least allow us to review, get over the jurisdictional bar for the motion to reopen? I don't think so. Why not? He focuses on what he perceives as a legal error in the board, misapplying the reasonable likelihood of demonstrating a prima facie case for reopening or materiality. But if you look at the board's decision, it didn't cite prima facie or materiality. The board denied the motion to reopen. It says further the respondent's statement and new evidence submitted in support of reopening would not alter the outcome of the case. And although that's not very clear, they do cite Matter of Coelho. And I think that Matter of Coelho tells us exactly what the board did. Matter of Coelho says, in a case such as the present one, talking about Coelho, making a prima facie showing of eligibility for the underlying relief being sought is largely irrelevant. And they went on to say that it was irrelevant because the alien in Coelho had already been determined eligible to apply for relief. Here, Mr. Muhammad was determined eligible to apply for asylum. He submitted an application for asylum. So the board goes on in Coelho to say that rather, in cases such as this, this board will ordinarily not consider a discretionary grant of a motion unless the moving party meets a heavy burden and presents evidence of such nature that the board is satisfied that the proceedings before the immigration judge were reopened with all the attendant delays, the new evidence offered would likely change the result of the case. Isn't that the definition of materiality? I don't think so. I think that is ultimately a discretionary denial. The regulations say that even if an alien demonstrates a prima facie case for the relief sought, that the board still has discretion to deny a motion to reopen. And I think that's what the board did in Matter of Coelho. It said that prima facie is not really an issue. And I didn't read this statement, but it says, moreover, the issue is not simply whether there is new evidence because evidence is always continuing. And this court held that in a motion to reopen context, it's not the chance to submit evidence after an application has been denied that adds onto the application. Any alien can look at why their application was denied and come up with new evidence that would likely change the outcome of the case. So a motion to reopen is not really the chance to do that. But if it's new evidence that was previously unavailable, then part of the assessment about whether to grant that motion to reopen or not  Isn't that the threshold materiality question that the court and BIA here had to answer and seems to have answered in denying the motion to reopen? Well, the motion to reopen regulations are in the negative. They say that the board shall not grant a motion to reopen unless new and material evidence has been provided. But I don't think that's what the board focused on here. I think the board said that we're looking at evidence that was largely considered in the immigration judge's decision. We're looking at the country condition evidence, which was largely submitted in the immigration judge's decision. And with all the delays that have been in this case, we're not going to change our mind. I think that's a discretionary determination. I think that even if you reach whether the evidence is new and material, those findings are factual that are beyond the court's review. If we disagree with you and think that the board was making a materiality determination, if we take that as a given, do you agree that the question of materiality of evidence presented for a motion to reopen is the kind of legal question that gets over the jurisdictional bar? I believe this court has held that materiality is, I think it was an unpublished decision, a commune or something like that. But it is a mixed question. When you look at the undisputed facts presented and whether it rises to meet the legal standard of materiality. So, I mean, I can't argue with this court's precedent. I would say that the court has also held that arguments that the immigration judge did not consider evidence or weigh evidence or improperly weighed factors, those are all discretionary determinations, all fact-finding, and that's Jarboe 483 F. 3rd 184. The case you were referencing, though, was a non-precedential opinion, so it's not the precedent of our circuit. We have not addressed yet in a precedential opinion in this context materiality as a legal question or mixed question that gets over the jurisdictional bar. We certainly have in the criminal context. Is there any reason that we should take a different approach to whether we have here a legal or mixed question of law, in fact, than we do in the criminal context? I think so. Materiality can mean a lot of different things in the immigration context, and I think that that's left to the discretion of the agency. Materiality can mean whether you're eligible for asylum. It can mean whether maybe now, based on these new facts, we would probably find you incredible and we would deny the application. So those are just a lot of reasons why maybe it wouldn't be best to import another criminal context into the immigration context. If we did reach the actual question of materiality, given the board's statement that this evidence, this harm was already taken into account in the immigration judge's decision, but the information in the affidavit obviously was not available. It wasn't before the immigration judge. Doesn't that on its face indicate that we have legal error, a failure to consider the actual evidence and arguments that were being presented on the motion to reopen? I think that's a factual error. A failure to consider evidence, as the case I just cited, is finding a fact. And this Court has held that when arguments made that an immigration judge or the board failed to consider certain evidence, that's a finding of fact barred by 1252A2C. So in the end, I think that the motion to reopen, he's arguing that the board did not consider the evidence or did not consider all the evidence in citing that the immigration judge's decision considered the evidence. Those are findings of fact. The only legal question raised in the motion to reopen was whether the board applied the correct legal standard. And as I continue to argue, I don't think the board really rested on materiality. They said that our decision isn't going to change even with this new evidence. Even if we send it back to the immigration judge, this might not rise to the level of persecution. And this Court has constantly held that whether an alien has demonstrated harm that rises to a level of persecution, whether there's a reasonable likelihood or it's more likely than not that he's going to establish persecution, or the same in the torture context. Those are all findings of fact reviewed for substantial evidence. All those are going to be barred by 1252A2C. If we're looking at whether it rose to the level of likely to change the outcome, and we have here evidence that was not previously presented, that instead of a single incident, there are three incidents. Instead of no evidence of injury, there's now substantial evidence of injury. Instead of no evidence of the state or police involvement, there's now evidence of police involvement in the persecution. How could we say, again, assuming that this wasn't previously available to be presented, that it wouldn't likely change the outcome? Again, that's just a factual finding by the Board. A likelihood of something happening, a likelihood of us changing our mind on this case, that's a factual finding. If you want to disagree, that's obviously your prerogative. But I believe that 1252A2C is going to bar that. And even if you send it back and they stay true to their word, even considering all this new evidence, they're going to find still there's no persecution. There's no past persecution. There's no more likely than not. That's still going to be barred by the criminal alien bar on a second appeal. I thought you agreed previously that materiality is a mixed question, that there is an inherent legal question of materiality. And isn't the determination about whether that additional evidence would likely change the outcome tantamount to whether the evidence is material? Well, Judge Crouch, I was just following this Court's unpublished opinion, which obviously is going to lead to some weight. But when you asked me whether materiality was a legal question, in my opinion, I think that it's best left to the discretion of the Board whether something is going to be material in a case-by-case basis and whether they're likely going to change their decision. I see my time has been up for a while. If there's no other questions. Thank you very much, Mr. Pan. Thank you. Mr. Green? Thank you, Your Honors. If I could just start by noting that in addition to the case that was just discussed, the Ekiman case, which held that this is precisely a mixed question involving the application of law to undisputed fact, the Court also reached a similar conclusion in, although another unpublished case, the Zumi decision, which is cited in our supplemental filing as well, that 641 Federal Appendix 120, which specifically held that in a motion to reopen context, determining whether the new evidence establishes a prima facie case for relief is something that the Court retains jurisdiction over despite the jurisdiction stripping statute. If I could also just get back to a question that Judge Crouch asked about what due process requires in this situation, I think due process is always a flexible concept. I think this Court has actually already answered what it requires. The decision in Torrey specifically advises immigration judges that to the extent they believe some fact might be dispositive of the claim that they're considering, they're required to specifically question or direct the applicant to provide testimony about that fact. Now, in this case, both at the immigration judge level and later at the Board, you have an express finding that Mr. Muhammad did not suffer past persecution because there's no evidence in the record that he ever suffered any injury or ever needed medical assistance. Even the government will have to concede that nobody in this proceeding ever asked any questions about injury. So that's precisely the kind of clear violation of this principle that was announced in Torrey and which is necessary to protect the integrity of these proceedings because due process certainly does not look kindly upon the notion that applicants should just be brought into a room and told, please tell me everything you would like for me to know about your claim. The types of applicants that the judges are routinely facing are people who lack the sophistication and lack the knowledge or the verbal ability to both know what facts might be relevant to their claims and to then actually articulate those facts effectively. I'd also just like to point out that Mr. Muhammad never refused to answer a single question from the immigration judge. At the merits hearing, she actually only asked one question, which was, after directing him to testify, do you have anything else you'd like to add? And he said no. He ceased answering questions when being cross-examined by the government attorney based on a written document, which because Mr. Muhammad is illiterate, he could not even actually read and respond to. I think that's relatively common, unfortunately, for unsophisticated people in this situation, to kind of just shut down when they're being asked these types of questions and not being guided to actually articulate the open testimony. Ms. Rubin, can I go back to a question I asked you at the end of your direct argument? And that is, given that you agree the board did not actually address the question of whether this evidence was previously available, to be presented by the petitioner, if we agreed with you that we could reach the question of the denial of motion to reopen with the jurisdictional bar because there was a threshold, legal or mixed question, and that the evidence here with that legal standard warranted remand, if we did not agree that there was a due process violation on this record, under those circumstances, do you agree that we would simply be remanding for additional proceedings? That is, the board would be making its own determination about whether the evidence was previously available and we would not be in a position, given the Chenery Doctrine, of instructing that the motion to reopen be granted. I think if I understand the question correctly, at first I don't agree that the decision does not reach a determination on whether this evidence could have been previously presented. I take the board's wording about new evidence to be sufficient to establish that it held that the regulation was satisfied for that purpose. But if the board finds that that determination hasn't been made here, and also finds that the evidence perhaps could have been previously presented, then I take your point, Your Honor, I suspect that the court would ultimately be remanding for additional consideration on that. You agree that that's an issue that the board needs to decide in the first instance? Whether the evidence could have been previously presented? Yes. Yes, Your Honor. Thank you very much. I want to commend Mr. Levine for his efforts as pro bono counsel on behalf of Mr. Muhammad. Our court relies heavily on pro bono counsel in cases like this that raise significant issues, and you've presented your case marvelously, and your firm as well is to be commended for making available to take on these types of assignments. Thank you very much. Thank you, Your Honor. We'll take the case under advisement.